IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| SHERYL CORNELIUS, personally, and as next of kin, to JERRY FRANK WRIGHT, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| VERSUS | ) ) | DOCKET NO. 2:23-CV-00007 JURY DEMANDED |
| JORDAN WINNINGHAM, in his personal capacity; and THE CITY OF CROSSVILLE, TENNESSEE, | ) ) ) ) | |
| Defendants. | ) | |

## INITIAL CASE MANAGEMENT ORDER

Pursuant to this Court's Local Rule 16.01, counsel for all parties have met and conferred to discuss the matters addressed in Federal Rule of Civil Procedure 26(f). Agreements reached by counsel or the parties' differing positions are memorialized in this joint proposed initial case management order, which reflects the case management preferences of Magistrate Judge Newbern and the presiding District Judge.

**A.     JURISDICTION:** The Court has jurisdiction pursuant to The Court has jurisdiction pursuant to 28 U.S.C. § 1331, § 1342(a)(3)(4), and § 1367(a).  This Honorable Court has jurisdiction over the Plaintiff's claims of violation of civil rights pursuant to 42 U.S.C. § 1983.

Jurisdiction and venue with respect to the allegations that any of the Defendants violated the Plaintiff's constitutional rights are admitted.  However, it is averred that this action is a tort action, and the exclusive and original jurisdiction for any state tort action against these Defendants

is in the Circuit Court of Cumberland County, Tennessee pursuant to Tennessee Code Annotated § 29-20-305.

    **B.**    **BRIEF THEORIES OF THE PARTIES:** *These statements shall briefly summarize the parties' positions and shall not be a recitation of the pleadings or argument of the claims.*

**PLAINTIFF:**

On the evening of February 25, 2021, Defendant Officer Winningham was on patrol when he received a call on his cell phone from an off-duty dispatcher, Kelsey Southern. Southern, who Officer Winningham refers to as "babe" during the call, complains about a confrontation she is apparently having with an unidentified man. Based on the dashcam and audio, Southern sounds like she says, "I'm almost in tears; he scared the fucking shit out of me." Winningham tells Southern, "I understand babe, but you need to calm down and don't be confronting people, let me fucking handle that shit." Southern then tells Winningham that the man is "leaving," and Winningham tells her, "Well fucking follow him and get a tag number." She then says the man is "fucking hauling," at which point Officer Winningham begins speeding and driving aggressively.

He runs through the stop sign at the intersection of Irwin Avenue and Stanley Street, turning left on to Stanley Street in the direction of West Avenue. As he approaches the intersection with West Avenue, he turns his blue lights on (without the siren) to pass two vehicles stopped at the red light. He runs the red light and turns right on to West Avenue. As he turns on to West Avenue, he turns his blue lights off and begins a hard acceleration.

Mr. Wright appears in the dashcam about 5 seconds before he is struck and killed. At about the same time that Mr. Wright appears in the dashcam, we can see him react and begin running to avoid being hit. Officer Winningham, on the other hand, is clearly still distracted by his heated call with Southern; he does not apply his brakes, slow down, or attempt any evasive

2

maneuver; he continues in a hard acceleration until the point of impact. According to the CIRT report, Officer Winningham was traveling at 41 mph, eleven miles over the posted speed limit of 30 mph.

In addition to violating numerous rules of the road, Officer Winningham's actions also violated several departmental policies established for the express purpose of public safety. Section 10.10, entitled "Pursuits," states the following:

> Officers of the Crossville Police Department may engage in a pursuit in order to apprehend an individual(s) <u>reasonably suspected of committing a violent felony</u>. <u>Pursuits of individual(s) reasonably suspected of committing other felonies or criminal traffic offenses (i.e., burglary, reckless driving, DUI, and leaving the scene of an accident with injuries) are considered less serious and should only be conducted when such a pursuit is in the best interest of public safety</u>. Pursuits of individuals for misdemeanors, traffic infractions, or eluding the officer solely for a traffic infraction should be avoided unless no other means of identifying the driver exists AND PUBLIC SAFETY IS NOT JEOPARDIZED. Once pursuit is engaged, all officers and supervisors involved will be held strictly accountable for adhering to the provisions of this policy.

Under this policy, Officer Winningham had no reasonable justification for engaging in a highspeed pursuit of any kind. There was no official dispatch whatsoever. He was acting on the vague accusations of an off-duty dispatcher, who he is arguing with and calling "babe." To our knowledge, Southern did not call 911 at any point, but instead called Winningham on his personal cell phone to complain about a man she had just confronted for some presently unknown reason. Further, while Officer Winningham claims, after killing Mr. Wright, that he was in hot pursuit of "a reckless driver headed over 90," at no point did Officer Winningham observe someone driving recklessly (other than himself). Further, Southern said the man was "leaving," so her confrontation with the man had ended. She apparently followed the man (at Officer Winningham's suggestion) but she never said the man was going 90 mph, only that he was "hauling." Additionally, Officer Winningham never reported to dispatch regarding his decision to initiate a pursuit.

Even if Officer Winningham was somehow justified in engaging in a highspeed pursuit, which he was not, he still violated departmental rules for initiating the pursuit in the first place. Section 10.10 goes on to state:

> The officer may initiate a traffic stop by turning on his or her emergency equipment. If the suspect fails to stop for the officer, he or she will immediately notify communications of the pursuit (if needed) and initiate the following procedure:
> - Activate audible and visual emergency equipment.
> - If possible, verify that Mobile video/audio recording equipment is recording. If it doesn't appear to be recording, notify the pursuit supervisor.
> - Advise communications of the following information:
>   - Unit number.
>   - The reason for the pursuit.
>   - Exact location and direction of travel.
>   - Description of the fleeing vehicle, to include, if available or possible:
>     1) Color.
>     2) Make.
>     3) License plate number.
>     4) Number and description of occupants, if available.
>     5) Speed of vehicle.
> - If a supervisor has not acknowledged the pursuit, the officer involved will solicit the supervisor's approval or disapproval immediately.

Here, however, Officer Winningham failed to follow any of these protocols: he activated his lights—but not his siren—then inexplicably turned his lights off before another hard acceleration only seconds before hitting and killing Mr. Wright; he never advised dispatch of the fact of his pursuit, let alone the reasons for it; nor did he involve his supervisor at any point during the pursuit.

This is an area of West Avenue (Highway 70) that is four-lanes and lined on either side with multiple businesses, vehicles entering and existing from businesses, and pedestrian traffic. According to publicly available records, there were approximately twenty-six (26) collisions during the previous five (5) years along this stretch of road. Clearly it is a congested area, and it

4

was reasonably foreseeable that a high-speed pursuit of a driver who the officer had not even observed (or been officially dispatched to pursue) would only create an unjustifiable risk to the public.

Furthermore, the incident happened at night, which naturally created an even more dangerous condition. This is highlighted by the fact that Officer Winningham's patrol vehicle, according to him, had poor visibility and bad headlights: as he put it, "I didn't see him;" "You can't see shit;" "You can't see shit with these god damn cars;" "You couldn't even see the motherfucker;" and "I couldn't see him. Of course, them headlights are shit anyhow."

Plaintiff timely initiated this action against Defendant Officer Winningham and Defendant Crossville on February 24, 2023. In Count I, Plaintiff alleges that Defendant Winningham violated Mr. Wright's rights under the Fourteenth Amendment. In Count II, Plaintiff alleges Monell liability against Defendant Crossville based on inadequate training and supervision. In Count III, Plaintiff alleges that Defendants were negligent in causing Mr. Wright's death.

**DEFENDANT:**

On February 25, 2022, Officer Jordan Winningham was on patrol in Crossville, Tennessee. An off-duty dispatcher contacted him about a reckless driver. As Officer Winningham was accelerating his vehicle to locate the reckless driver, the deceased Jerry Frank Wright crossed the road and ran directly into the oncoming path of the Defendant. Officer Jordan's vehicle struck Mr. Wright causing his death. Officer Winningham had absolutely no opportunity to avoid the accident. Mr. Wright crossed the road in the middle of a block and did not use a crosswalk.

The Complaint fails to state a cause of action for which relief may be granted. The City of Crossville does not have an unconstitutional custom, practice or policy. The Plaintiff personally and as next of kin of Jerry Frank Wright's, constitutional rights were not violated by any employee

5

Case 2:23-cv-00007   Document 13   Filed 05/31/23   Page 5 of 13 PageID #: 68

of The City of Crossville. This case is a result of injuries sustained in an accident and were not sustained as a result of any constitutional violation.

This was an accident, and did not constitute a violation of Jerry Frank Wright's constitutional rights. At no time did any City of Crossville employee, or The City of Crossville, intend to violate any rights of Jerry Frank Wright.

Accordingly, it is respectfully submitted that this case should be dismissed because it is governed by the Tennessee Governmental Tort Liability Act. Other affirmative defenses include:

1. With respect to any allegations of negligence against these Defendants, Officer Jordan Winningham, both individually and as an Officer, is entitled to entitled to total personal immunity pursuant to the provisions of the Tennessee Governmental Tort Liability Act codified in T.C.A. § 29-20-101 et seq., including T.C.A. § 29-20-310.

2. With respect to any state law claims under the Governmental Tort Liability Act against these Defendants, the exclusive and original jurisdiction and venue for said action is in the Circuit Court for Cumberland County, Tennessee. Accordingly, it is denied that this Court is the proper jurisdiction or venue to resolve said claims.

3. With respect to any constitutional violations alleged against Officer Winningham, individually or otherwise, he asserts that he is entitled to qualified immunity.

4. It is denied that the City of Crossville has an unconstitutional custom, practice or policy, and it is further denied that the City of Crossville was deliberately indifferent in the training of Officer Winningham.

These Defendants reiterate the affirmative defenses set forth at the inception of this responsive pleading. These Defendants collectively assert that they are entitled to qualified immunity. It is

denied that there was any violation of any constitutional right of the Plaintiff's decedent, and it is denied that they violated any clearly established right of Jerry Frank Wright, deceased.

5. Defendant Winningham specifically pleads the doctrine of sovereign immunity and all privileges and immunities in accordance with the Tennessee Governmental Tort Liability Act, including the limitation on damages, the limitation to a non-jury trial, and the limitation on personal immunity set forth in T.C.A. §29-20-310.

6. As it relates to Defendant Jordan Winningham, at all times relative to this suit, the Defendant was engaged in the course and scope of his employment with the City of Crossville. This Defendant is entitled to immunity, and should not have been sued in his individual capacity. It is averred that this Defendant is entitled to his attorney's fees pursuant to T.C.A. §29-20-113.

7. Alternatively, and pending investigation and in order to avoid waiver, the Complaint in its entirety fails to state a cause of action upon which relief may be granted as to the Defendants, including, among other reasons and defenses, that the lawsuit may not be filed in the name of the proper statutorily prescribed individual.

8. The Defendants rely upon the doctrine of modified comparative fault. To the extent that the acts and/or omissions of Jerry Frank Wright were the proximate cause or a proximate cause of the accident and any damages claimed by the Plaintiffs, the Defendants rely upon the doctrine of modified comparative fault. Specifically, upon information and belief, Jerry Frank Wright was negligent in the following ways:

   a. Jerry Frank Wright was in violation of T.C.A. §55-8-135(a) and (c) and T.C.A. §55-8-134.

   b. Jerry Frank Wright, wearing dark clothes, a dark hoodie and black shoes, was attempting to walk across four (4) lanes of traffic, with oncoming traffic.

7

Case 2:23-cv-00007   Document 13   Filed 05/31/23   Page 7 of 13 PageID #: 70

c. That Jerry Frank Wright ran on foot in front of the oncoming vehicle being driven by Defendant Winningham.

   d. Defendant Jordan Winningham had the right-of-way, and it is pled that the deceased, Jerry Frank Wright failed to yield the right-of-way to the oncoming traffic.

   e. Jerry Frank Wright failed to exercise due and reasonable care in crossing a four-lane highway that a reasonable and prudent person under the same or similar circumstances would exercise. Alternatively, and to the extent it is shown that the acts or omissions of the Defendants, including, but not limited to, the allegations specifically set forth above proximately caused the accident, in whole or in part, the Defendants assert that any judgment against them should be barred or reduced by the amount of the fault attributed to Jerry Frank Wright.

9. The Defendants specifically plead and aver all provisions of the "Tennessee Civil Justice Act of 2011," including but not necessarily limited to the provisions codified at T.C.A. §29-39-101 et seq, that may be shown applicable in this action. The Defendants specifically incorporate by reference any and all standards and limitations regarding the determination and/or enforceability of economic and noneconomic damages under T.C.A. §29-39-102.

10. When the deceased, Jerry Frank Wright ran in front of the Defendant's vehicle, Jordan Winningham's vehicle, the Defendant was confronted with a sudden emergency created solely by the deceased, Jerry Frank Wright. The Defendants therefore plead the defense of sudden emergency.

11. The Defendants plead that the sole and proximate cause of the accident was the negligence of Jerry Frank Wright.

C.  ISSUES RESOLVED:

Jurisdiction and venue with respect to the allegations that any of the Defendants violated the Plaintiff's constitutional rights are admitted. However, it is averred that this action is a tort action, and the exclusive and original jurisdiction for any state tort action against these Defendants is in the Circuit Court of Cumberland County, Tennessee pursuant to Tennessee Code Annotated § 29-20-305.

ISSUES STILL IN DISPUTE:

Liability, damages and jurisdiction over GTLA claims.

D.  INITIAL DISCLOSURES:

The parties shall exchange initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1) within 30 days of the initial case management conference, on or before**.**

E.  CASE RESOLUTION PLAN AND JOINT STATUS REPORTS:

The parties shall develop a plan for resolution of the case that includes at least two independent attempts to resolve the case. The first attempt shall occur no later than 120 days from the initial case management conference, which is September 28, 2023. By no later than that date, the parties shall submit a joint report to advise the Court that the parties made a good faith effort to resolve the case. The report shall state the specific steps taken toward case resolution, including that an offer or demand has been made and responded to and that counsel have discussed the parties' positions. The parties shall have conducted enough discovery or otherwise exchanged sufficient information to evaluate and discuss settlement substantively. The fact that discovery is ongoing or that a dispositive motion is pending does not relieve the parties of this requirement. If the parties request referral for pro bono mediation or to a Magistrate Judge for a judicial settlement conference, they must make that request by motion. The motion shall include a statement as to

why private mediation is not feasible and, if a judicial settlement conference is requested, why that is the preferable means of resolving the particular case. An updated joint report, including whether the parties have scheduled mediation or another form of ADR, shall be filed no later than 60 days before the deadline for the filing of dispositive motions.

The parties may request referral to a member of the Court's ADR Panel for pro bono mediation by filing a motion that states why private mediation is not feasible and why referral to a mediator will materially advance the resolution of the case.

**F.    DISCOVERY:**

The parties shall complete all written discovery and depose all fact witnesses on or before **December 1, 2023.** Written discovery shall proceed promptly (unless otherwise provided for herein) and shall be served no later than **July 15, 2023**. Discovery is not stayed during dispositive or other motions, unless ordered by the Court.

No motions concerning discovery are to be filed until after counsel have spoken in a good faith effort to resolve any dispute(s).

If the parties are unable to resolve a discovery dispute after conferring in good faith as required by the Court's Local Rule 37.01 and the District Judge's case management preferences, counsel shall file a motion for resolution of a discovery dispute to request a discovery dispute telephone conference. Not later than two days before the conference, the parties shall file a joint statement of the discovery dispute that states the particular requests or responses at issue, summarizes counsel's good-faith discussions, and briefly addresses the parties' positions. Each party's position statement shall be limited to no more than three pages per issue. The parties may attach documents for review that will be useful to the Court's understanding of the dispute. If the parties are unable to reach a resolution of the dispute after the conference, the Magistrate Judge

10

Case 2:23-cv-00007   Document 13   Filed 05/31/23   Page 10 of 13 PageID #: 73

will set a schedule for discovery motion briefing. If a party files a discovery motion before a discovery dispute conference has been held, the motion will likely be terminated.

All motions related to fact discovery shall be filed by no later than **November 1, 2023.**

### G. MOTIONS TO AMEND OR TO ADD PARTIES:

Any motions to amend or to add parties shall be filed no later than **July 15, 2023.**

Any motion to amend must be accompanied by the proposed amended pleading, which shall be included as an exhibit to the motion. Before filing the motion to amend, counsel for the moving party shall discuss the proposed amendment with all other counsel and shall state in the motion to amend whether the motion is opposed. Any motion to amend must comply with Local Rules 7.01 and 15.01.

### H. DISCLOSURE AND DEPOSITIONS OF EXPERT WITNESSES:

The plaintiff(s) shall identify and disclose all expert witnesses and expert reports on or before **January 2, 2024.** The defendant(s) shall identify and disclose all expert witnesses and expert reports on or before **February 2, 2024**. All expert witnesses shall be deposed on or before **March 1, 2024**.

No supplemental expert reports or rebuttal experts shall be allowed, except upon order of the Court for good cause shown.

### I. NEXT CASE MANAGEMENT CONFERENCE:

The parties may request a case management conference at any time by filing a motion that states the topic(s) to be addressed and identifies mutually convenient dates and times for the conference.

### J. DISPOSITIVE MOTIONS:

Dispositive motions shall be filed by no later than **May 1, 2024.** Responses to dispositive motions shall be filed within 28 days after the filing of the motion. Briefs or memoranda of law in

support of or in opposition to a dispositive motion shall not exceed 25 pages. Optional replies may be filed within 14 days after the filing of the response and shall not exceed 5 pages. No motion for partial summary judgment shall be filed except upon leave of court. Any party wishing to file such a motion shall first file a separate motion that gives the justification for filing a partial summary judgment motion in terms of overall economy of time and expense for the parties, counsel and the Court. In all other respects, the provisions of Local Rule 56.01 shall govern.

K.  **ELECTRONIC DISCOVERY:**

The parties shall discuss any anticipated electronic discovery before the initial case management conference. If the parties reach an agreement on how to conduct electronic discovery in this case, Administrative Order 174-1 need not apply. Any agreement among the parties to address electronic discovery shall be reduced to writing, signed by counsel, and filed as a stipulation of agreed-upon electronic discovery procedures. If the parties request the Court's approval of their agreement, they shall file it was a proposed agreed order with the appropriate accompanying motion. In the absence of an agreement, Administrative Order 174-1 will apply.

L.  **MODIFICATION OF THE CASE MANAGEMENT ORDER:**

Any motion to modify the case management order or any case management deadline shall be filed at least seven (7) days before the earliest affected deadline. If the parties agree, the motion may be filed up to the earliest affected deadline. The motion must include a statement confirming that counsel for the moving party has discussed the requested modification or extension with opposing counsel and whether there is any objection to the motion. The motion (even if a joint motion) must also include: (i) all deadlines, even unaffected deadlines, so that it will not be necessary for the Court to review previous case management orders in consideration of the motion and (ii) a statement that the requested extension will still conform to the requirements of Local Rule

16.01(d)(2)(f) that no dispositive motion, including response and replies, be filed later than 90 days in advance of the target trial date.

M.     **REQUESTS TO SEAL DOCUMENTS:**

Any party requesting that documents or portions of documents be sealed must demonstrate compelling reasons to seal the documents and that the sealing is narrowly tailored to those reasons. The motion to seal, even if unopposed, must "analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Beauchamp v. Fed. Home Loan Mortg. Corp.*, No. 15-6067, 2016 WL 3671629, at *4 (6th Cir. July 11, 2016) (quoting *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305–06 (6th Cir. 2016)). Protective orders should not provide that documents produced in discovery and designated as "confidential" will automatically be sealed upon filing or use at trial. Any such language in a proposed protective order will be stricken and may result in denial of the motion to enter the protective order.

N.     **ESTIMATED TRIAL TIME AND TARGET TRIAL DATE:**

The jury trial of this action is expected to last approximately 3 days. The target trial date is **October 15, 2024**. The requested trial date and the dispositive motion deadline proposed in this Order conform to Local Rule 16.01(h)(1).

It is so ORDERED.

*[signature]*
ALISTAIR E. NEWBERN
United States Magistrate Judge