UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| SHERYL CORNELIUS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 2:23-cv-00007 |
|  | ) |  |
| JORDAN WINNINGHAM, et. al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## MEMORANDUM OPINION

This case involves the tragic death of Jerry Frank Wright, who, on February 25, 2022, was struck and killed by Crossville Police Department Officer Jordan Winningham's patrol vehicle as he crossed the street. Plaintiff Sheryl Cornelius, on behalf of her father Mr. Wright, sued Officer Winningham under § 1983 for depriving Mr. Wright of his Fourteenth Amendment right to life. She also brought related Tennessee negligence claims against Officer Winningham and the City of Crossville, Tennessee (collectively, "Defendants"). Now before the Court is Defendants' Motion for Summary Judgment (Doc. No. 25), which is fully briefed and ripe for review (see Doc. Nos. 27, 33, 35). For the following reasons, Defendants' Motion will be granted, and this case will be dismissed.

**I.       UNDISPUTED FACTS[1]**

On February 25, 2022, at around 8:50 p.m., off-duty Cumberland County dispatcher Kelsea Southern called on-duty Officer Winningham's cell phone to report that she had seen another

---

[1] The facts in this section are undisputed unless specifically noted otherwise, and are drawn from the undisputed portions of the Defendants' statements of facts (Doc. No. 34), the exhibits, depositions, and declarations submitted in connection with the summary judgment briefing, and portions of the Complaint (Doc. No. 1) that are not contradicted by the evidence in the record.

driver acting recklessly and dangerously, nearly running her off the road on the highway. (Doc. No. 34 ¶¶ 1–3). Officer Winningham was driving in his patrol car when he received this call. It is undisputed that nighttime video footage from his patrol car captured the end of this call and the following incident. (Id. ¶ 14).

As reflected in the video footage, Southern and Winningham both refer to each other as "babe" during the call, (Defendants' Manual Exhibit ("Video") at 0:00:01),[2] and Southern later testified that the two were engaged in a "sexual relationship" at this time, (Doc. No. 33-4 (Southern Dep.) at 10–12). After hearing that Southern was "almost in tears" because of this alleged reckless driver, Winningham tells Southern to "calm down" and to let him "handle" it. (Video at 0:00:06). Southern responds that the driver is "leaving" and "hauling" away from where she saw him, and Winningham asks "where's he at?" (Id. at 0:00:15). The audio of Southern's response is muffled, but it appears she provides Winningham with directions or a location of the driver. (Id. at 0:00:29).

Officer Winningham accelerates and turns on his blue lights to pass two vehicles stopped at a red light. (Id. at 0:00:38). He then proceeds through the red light and turns right onto the next street. (Id. at 0:00:46). He turns off his blue lights and again accelerates after finishing his right turn and proceeding straight. (Id. at 0:00:48). Seconds later, a pedestrian wearing dark colored clothing (later identified as Mr. Wright) starts crossing the middle of the street in front of Officer Winningham's vehicle. (Id. at 0:00:50). Winningham's car collides into Mr. Wright's body before coming to a complete stop, and Winningham tells Southern: "Oh my god, I just hit somebody." (Id. at 0:00:53). Winningham then activates his car's recording system, which retroactively

---

[2] Defendants' Manual Exhibit is a copy of Officer Winningham's February 25, 2022 patrol vehicle video that was filed manually with the Clerk's office. (See Doc. No. 36). References to the video's timestamp reflect the approximate start time of an event.

captured the video footage described above. (Doc. No. 34 ¶ 13). Mr. Wright died from the collision. (See Doc. No. 1 ¶19).

Based on the circumstances leading to her father's death, Plaintiff brought this § 1983 action against Officer Winningham for allegedly violating Mr. Wright's Fourteenth Amendment right to life, and against the City of Crossville based on municipal liability. (Doc. No. 1 ¶¶ 42–57). She also brought Tennessee negligence claims against both Defendants. (Id. ¶¶ 58–62). Defendants now move for summary judgment on all of Plaintiff's claims. (Doc. Nos. 25, 27).

## II. LEGAL STANDARD

Summary judgment is appropriate only where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the non-moving party's case. Id. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which a trier of fact could reasonably find for the non-moving party. Rodgers, 344 F.3d at 595.

In deciding a motion for summary judgment, the Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Instead, the Court generally reviews all the evidence, facts, and inferences in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). "But where, as here, there

3

Case 2:23-cv-00007     Document 37     Filed 09/12/24     Page 3 of 10 PageID #: 672

is 'a videotape capturing the events in question,' the court must 'view[] the facts in the light depicted by the videotape.'"  Green v. Throckmorton, 681 F.3d 853, 859–60 (6th Cir. 2012) (quoting Scott v. Harris, 550 U.S. 372, 378–81 (2007)).

III. **ANALYSIS**

As an initial matter, Plaintiff states in her opposition brief that she "will not oppose dismissal" of her municipal liability claim against the City of Crossville.  (Doc. No. 33 at 1 n.1).  That leaves only her § 1983 claim against Officer Winningham, and her Tennessee negligence claims against both Defendants.

A. Section 1983 Claim Against Officer Winningham

The Court first addresses Plaintiff's §1983 claim against Officer Winningham.  To survive summary judgment in a § 1983 action, the plaintiff must demonstrate a genuine issue of material fact "that a person acting under color of state law deprived [him or her] of a right secured by the Constitution or laws of the United States." Green, 681 F.3d at 859–60 (citation omitted); Wurzelbacher v. Jones-Kelley, 675 F.3d 580, 583 (6th Cir. 2012).  Plaintiff argues that there is at least a dispute of fact regarding whether Officer Cunningham—clearly a "person acting under color of state law"—violated her father's right to life under the Fourteenth Amendment by (1) engaging "in a risky totally unjustified high-speed pursuit of an unknown driver simply because his friend (or 'babe') encouraged him to;" (2) "violating numerous rules of the road," including failing to "apply his brakes, slow down, or attempt any evasive maneuver;" and (3) violating "several departmental policies established for the express purpose of public safety," including turning his lights off before a hard acceleration and failing to advise dispatch or his supervisor about the reasons for his pursuit.  (Doc. Nos. 1 ¶ 46; 33 at 2–7).  Defendants respond that "[a]t the absolute worst, these are claims of negligence or gross negligence, not of constitutional violations."  (Doc. No. 25 at 3).  The Court agrees with Defendants.

Plaintiff's § 1983 claim for deprivation of Mr. Wright's life is best characterized as a Fourteenth Amendment substantive due process claim. See County of Sacramento v. Lewis, 523 U.S. 833, 842–43 (1998). A government official deprives a person of their right to life and violates substantive due process when the official's conduct is "arbitrary," but "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." Id. at 845–46 (citation and internal quotation marks omitted). Accordingly, the Supreme Court has held that only conduct that "shocks the conscience" is actionable as a substantive due process violation under § 1983. Id. at 846–47; see also Daniels v. Williams, 474 U.S. 327, 331 (1986) (citations omitted) ("Historically, the guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property."). Of course, what "shocks the conscience" is fact-specific and will vary from case to case. See Guertin v. Michigan, 912 F.3d 907, 923 (6th Cir. 2019). "But negligence—even gross negligence—does not suffice to state a substantive due process claim in the context of police pursuits." Lombardo v. Ernst, 597 F. App'x 813, 816–17 (6th Cir. 2014) (citations omitted).

The parties disagree about the level of culpability Plaintiff must show to satisfy the "shocks-the-conscience" standard. Defendants ask the Court to apply the "intent to harm" standard set forth in Lewis, which is the seminal Supreme Court case addressing § 1983 due process claims in the context of police vehicle collisions. There, a police officer chased a motorcycle operator and his passenger in a residential neighborhood "at a distance as short as 100 feet" and at "speeds up to 100 miles an hour." Lewis, 523 U.S. at 836–37. The motorcycle eventually tipped over during a sharp turn, and the police officer struck and killed the passenger traveling "at 40 miles an hour." Id. at 837. The passenger's estate sued the officer under § 1983, alleging that the officer deprived him of his Fourteenth Amendment substantive due process right to life. Id. In ruling for

the officer, the Supreme Court held that police pursuits "with no *intent to harm* suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressable by an action under § 1983." Id. at 854 (emphases added). "While prudence would have repressed the reaction" to chase the motorcycle at breakneck speed, "the officer's instinct was to do his job as a law enforcement officer, not to induce [the motorcycle operator's] lawlessness, or to terrorize, cause harm, or kill." Id. at 855. "Regardless whether [the officer's] behavior offended the reasonableness held up by tort law or the balance struck in law enforcement's own codes of sound practice, it [did] not shock the conscience" for purposes of a due process violation. Id.

The Sixth Circuit has since applied the "intent to harm" standard to analogous situations, holding that a police officer's high-speed pursuit, eventually leading to the death of an innocent bystander not involved in the pursuit, is not, standing alone, conduct that "shocks the conscience." For example, in Meals v. City of Memphis, an officer engaged in a dangerous high-speed chase of a vehicle "without audible (siren) or visual (blue lights) signals," in violation of the City's police vehicle operation and pursuit policy. 493 F.3d 720, 724 (6th Cir. 2007). The driver of the vehicle collided with another car during the chase, killing himself and two of the other car's occupants, and rendering a third passenger in the car a permanent paraplegic. Id. In reversing the district court's denial of qualified immunity, the Sixth Circuit held that the pursuing officer did not engage in conduct that shocked the conscience because there was no evidence that she *intended* to cause the fleeing suspect's vehicle to crash. Id. at 730–31. In Lombardo, the Sixth Circuit likewise affirmed the district court's grant of summary judgment because the § 1983 plaintiff "failed to offer evidence that [the officer] acted with a purpose to harm him." Lombardo, 597 F. App'x at 816–17.

Plaintiff, on the other hand, argues that Officer Winningham's "deliberate indifference" (rather than "intent to harm") is sufficient to satisfy the shocks-the-conscious standard in this case. (See Doc. No. 33 at 6–8). Fourteenth Amendment case law generally recognizes a "spectrum" of culpability for behavior that may shock the conscience, with "closer calls" falling somewhere in the middle of conduct "intended to injure" and "negligently inflicted harm." See Lewis, 523 U.S. at 849–50; see also Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ., 542 F.3d 529, 535 (6th Cir. 2008). "Deliberate indifference can also form the basis for a 'shocks the conscience' claim." Kerchen v. Univ. of Mich., 100 F.4th 751, 764 (6th Cir. 2024) (citing Lewis, 523 U.S. at 850)). "Actions taken in these middle stages of culpability 'may or may not be shocking depending on the context.'" Id. (quoting Hunt, 542 F.3d at 535). Plaintiff contends that Officer Winningham's conduct falls somewhere in the "middle of the spectrum" between intent to injure and mere negligence, and therefore there is a genuine dispute of fact regarding whether there has been a constitutional violation. (See Doc. No. 33 at 6).

The undisputed facts and evidence in the record preclude the Court from applying a less heightened "deliberate indifference" standard here. The Sixth Circuit has held that a deliberate indifference or "midlevel culpability standard is not sensible in fast-paced situations, such as the one presented in this case where actual deliberation by the officer is not practical." Lombardo, 597 F. App'x at 817. Notably, the alleged constitutional violation in this case is not Winningham's decision to pursue an unidentified suspect "to appease his 'babe'" (Doc. No. 33 at 8); rather, it is Winningham's act of striking and killing Mr. Wright with his patrol vehicle that Plaintiff alleges violated Mr. Wright's Fourteenth Amendment right to life. (See Doc. No. 1 ¶ 46). The video in this case demonstrates that on the night of February 25, 2022, Mr. Wright was wearing dark clothes, it was dark outside, and there was, at most, three seconds between when Mr. Wright first

7

Case 2:23-cv-00007    Document 37    Filed 09/12/24    Page 7 of 10 PageID #: 676

appears on screen to when Winningham's vehicle strikes him.  (See Video at 0:00:50).  Having studied this video footage carefully, the Court does not find that Winningham had time to deliberate his decision to continue driving forward when Mr. Wright crossed the street.  By the time Mr. Wright entered the road, it was already too late.  Because Officer Winningham "did not have the time to make a calm, reflective and unhurried judgment" before hitting Mr. Wright, the Court finds that the "intent to harm" standard applies in this case.  See Roybal-Mack v. New Mexico Dep't of Pub. Safety, 286 F. Supp. 3d 1226, 1236 (D.N.M. 2017); see also Helseth v. Burch, 258 F.3d 877, 871 (8th Cir. 2001) (en banc) ("[T]he intent-to-harm standard of Lewis applies to all § 1983 substantive due process claims based upon the conduct of public officials engaged in a high-speed automobile chase aimed at apprehending a suspected offender[.]").

Here, the Court finds no facts in the pleadings or the record, viewed in the light most favorable to Plaintiff, showing that Officer Winningham committed any acts intended to harm Mr. Wright or the unidentified target of the pursuit.³  Plaintiff's factual arguments to the contrary—focusing on Winningham's allegedly improper purpose for the pursuit, his failure to turn on his siren or keep his overhead lights on, his "hard acceleration" after turning right after the red light, and his failure to inform dispatch or his supervisor of the pursuit—sound in negligence.  But as the Court mentioned above, even gross negligence is not enough to "shock the conscience" for a Fourteenth Amendment violation.  Lombardo, 597 F. App'x at 816.  Whether Winningham

---

³ In this context, the Court is not aware of any Sixth Circuit cases holding that an officer's "intent to harm" must be directed at the pursued suspect, rather than the bystander himself.  However, at least one district court has held that if an officer intends to harm "*anyone* unrelated to the legitimate object of arrest," including an innocent bystander, then that will satisfy "the element of arbitrary conduct shocking to the conscience" to support a "claim for violation of [a plaintiff's] Fourteenth Amendment rights."  Estate of Soakai v. City of Oakland, 2023 WL 8242121, at *4 (N.D. Cal. Nov. 28, 2023).

violated his own department's rules, if true, may be grounds for reprimand by his employer, but it does not support a § 1983 claim against him in his individual capacity. See Lewis, 523 U.S. at 855. Because there is no evidence that Officer Winningham *intended* to harm anyone, the Court finds that Plaintiff's substantive due process claim fails and must be dismissed.[4] See Hill v. Shobe, 93 F.3d 418, 421–22 (7th Cir. 1996) ("The fact that a public official committed a common law tort with tragic results fails to rise to the level of a violation of substantive due process.").

    B.    Tennessee Negligence Claims Against Officer Winningham and the City of Crossville

Having dismissed Plaintiff's sole remaining federal claim, the Court has decided not to retain supplemental jurisdiction over Plaintiff's Tennessee negligence claims because, pursuant to 28 U.S.C. § 1367(c)(3), there is a "strong presumption in favor of declining to exercise jurisdiction over supplemental state-law claims after dismissing federal anchor claims." Martinez v. City of Cleveland, 700 F. App'x 521, 523 (6th Cir. 2017); see also Taylor v. First of Am. Bank-Wayne, 973 F.2d 1284, 1287 (6th Cir. 1992) (holding that "if the federal claims are dismissed before trial, . . . the state claims [generally] should be dismissed as well"). Fairness and comity dictate that the Tennessee courts should decide this claim, which alleges that state actors violated state law.[5]

## IV. CONCLUSION

The Court acknowledges the unfortunate and tragic nature of events that led to Mr. Wright's untimely passing, and it hopes Plaintiff will one day find peace. But based on the

---

[4] Given that the Court finds no constitutional violation, there is no need to consider Officer Winningham's alternative argument that he is entitled to qualified immunity. (See Doc. No. 25 at 3).

[5] The Supreme Court and Sixth Circuit have held that § 1367(d)'s tolling provision pauses the clock on a state statute of limitations in federal court until at least 30 days after the state claim is dismissed. See Artis v. District of Columbia, 583 U.S. 71, 91–92 (2018); In re Vertrue Inc. Marketing & Sales Practices Litig., 719 F.3d 474, 481 (6th Cir. 2013).

undisputed facts and video footage in the record, the Court does not and cannot find that Officer Winningham's actions on February 25, 2022, "shock the conscience" to support a § 1983 claim. Therefore, for the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. No. 25) will be granted, and this case will be dismissed.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE